UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

RICARDO BRYAN,
     Petitioner,

vs.                       Case No.:  4:20cv357/TKW/EMT

MARK S. INCH,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Ricardo Bryan (Bryan) commenced this case by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 1).  Bryan challenges five disciplinary reports (DRs) issued by the Florida Department of Corrections (FDOC) (*see id.*).  Respondent (the State) filed a response to the petition, with relevant portions of the state court record (ECF No. 9).  Bryan filed a reply (*see* ECF No. 11).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B)–(C) and Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by the parties, and the state court record, it is the opinion of the undersigned that Bryan is not entitled to federal habeas relief.

## I.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF Nos. 9-1 through 9-23).[1]   Bryan challenges the following DRs issued by the FDOC in May and June of 2018:   DR Log #115-180895, DR Log #115-180896, DR Log #115-180907, DR Log #115-180909, and DR Log #115-180910.

### Disciplinary Report Log # 115-180895

On May 30, 2018, Lieutenant Pryor issued Bryan a DR for aggravated battery or attempted aggravated battery on a correctional officer, a violation of Rule 33-601.314, Sect. 1-7 of the Florida Administrative Code, based upon events that occurred on May 29, 2018 (ECF No. 9-1).   On June 5, 2018, Bryan received notice of the charge (*see* ECF Non. 9-1 at 2).

Officer Calfee investigated the charge (*see* ECF Nos. 9-1, 9-2, 9-3, 9-4). Bryan declined staff assistance (*see* ECF No. 9-2 at 1).   Bryan submitted the following written statement regarding his version of the events underlying the DR: "I'm extremely sorry for what I did."  (*id.* at 2).   Bryan was given the opportunity to name and request witnesses in his defense, but he stated he had no witnesses (ECF

---

[1] The court refers to the document numbers and page numbers automatically assigned by the court's electronic filing system.

No. 9-3).  Bryan was also given the opportunity to request documentary and physical evidence (including video evidence) in his defense, but he stated he did not have any evidence (ECF No. 9-4).   Officer Calfee interviewed Lieutenant Pryor (the charging staff member) and two witnesses, Officer Hammac and Officer Blackburn (ECF No. 9-2 at 1, 3, 4).

Bryan's disciplinary hearing was held on June 11, 2018 (ECF No. 9-1 at 2–3).  Bryan was present at the hearing, pled not guilty, and declined staff assistance (*id.*).  The hearing team consisted of Officer Barnes and Officer Odom (*id.*).  The DR Team read the statement of facts section of the DR to Bryan, and he stated he agreed with the facts as written (*id.* at 2).  The hearing team (DR Team) found Bryan guilty of the charged infraction, based upon the written statement of Lieutenant Pryor and the completed investigation (*id.*).  The DR Team issued a written decision stating the basis for its decision (*id.* at 2–3).  As a result of the infraction, Bryan was assigned to disciplinary confinement for 60 days and lost 300 days of gain time (*id.* at 3).  Bryan appealed the disciplinary decision through the administrative grievance process (ECF Nos. 9-6, 9-7, 9-8).

### Disciplinary Report Log # 115-180896

Also on May 30, 2018, Lieutenant Pryor issued Bryan a DR for battery or attempted battery on a correctional officer, a violation of Fla. Admin. Code Rule 33-

601.314, Sect. 1-15, based upon events that occurred on May 29, 2018 (ECF No. 9-9).  On June 5, 2018, Bryan received notice of the charge (*see* ECF No. 9-9 at 1).

Officer Calfee investigated the charge (*see* ECF Nos. 9-9, 9-10, 9-1, 9-12).  Bryan declined staff assistance (*see* ECF No. 9-10 at 1).   Bryan submitted the following written statement regarding his version of the events underlying the DR: "I'm sorry for what occured [sic]."  (*id.* at 2).  Bryan was given the opportunity to name and request witnesses in his defense, but he stated he had no witnesses (ECF No. 9-11).  Bryan was also given the opportunity to request documentary and other evidence in his defense, but he stated he did not have any evidence (ECF No. 9-12).  Officer Calfee interviewed Lieutenant Pryor (the charging staff member) and two witnesses, Officer Hammac and Officer Blackburn (ECF No. 9-10 at 1, 3, 4).

Bryan's disciplinary hearing was held on June 11, 2018 (ECF No. 9-9 at 2–3).  Bryan was present at the hearing, pled not guilty, and declined staff assistance (*id.* at 2).  The DR Team consisted of Officer Barnes and Officer Odom (*id.* at 3).  The DR Team read the statement of facts section of the DR to Bryan, and he stated he agreed with the facts as written (*id.*).  The DR Team found Bryan guilty of the charged infraction, based upon the written statement of Lieutenant Pryor and the completed investigation (*id.* at 3).  The DR Team issued a written decision stating the basis for its decision (*id.*).  As a result of the infraction, Bryan was assigned to

disciplinary confinement for 60 days and lost 286 days of gain time (*id.* at 3).  Bryan appealed the disciplinary decision through the administrative grievance process (ECF Nos. 9-14, 9-15, 9-16).

**Disciplinary Report Log # 115-180907**

On June 1, 2018, Officer Richert issued Bryan a DR for battery or attempted battery on a correctional officer, a violation of Fla. Admin. Code Rule 33-601.314, Sect. 1-15, based upon events that occurred on May 29, 2018 (ECF No. 9-17).  On June 7, 2018, Bryan received notice of the charge (*see* ECF No. 9-17 at 1).

Officer Aaron investigated the charge (*see* ECF No. 9-17 at 1).  Bryan declined staff assistance (*see id.*).  Sergeant Lewis provided a witness statement (*see id.*).

Bryan's disciplinary hearing was held on June 12, 2018 (ECF No. 9-17 at 2). Bryan was present at the hearing, pled not guilty, and declined staff assistance (*id.* at 2).  The DR Team consisted of Officer Barnes and Officer Odom (*id.*).  The DR Team found Bryan guilty of the charged infraction, based upon the written statement of Officer Richert and the completed investigation (*id.*).  The DR Team issued a written decision stating the basis for its decision (*id.*).  As a result of the infraction, Bryan was assigned to disciplinary confinement for 60 days (*id.*).  Bryan appealed

the disciplinary decision through the administrative grievance process (ECF No. 9-18).

### Disciplinary Report Log # 115-180909

Also on June 1, 2018, Captain Johnson issued Bryan a DR for Tampering With, Defeating, or Depriving Staff of Any Security Device (a canister of MK-4 chemical agent), a violation of Fla. Admin. Code Rule 33-601.314, Sect. 9-33, based upon events that occurred on May 29, 2018 (ECF No. 9-19 at 1). On June 7, 2018, Bryan received notice of the charge (*see id.* at 2).

Officer Aaron investigated the charge (*see* ECF No. 9-19 at 1). Bryan declined staff assistance (*see id.*). Officer Hammac provided a witness statement (*see id.*).

Bryan's disciplinary hearing was held on June 12, 2018 (ECF No. 9-19 at 2). Bryan was present at the hearing, pled not guilty, and declined staff assistance (*id.*). The DR Team consisted of Officer Barnes and Officer Odom (*id.*). The DR Team found Bryan guilty of the charged infraction, based upon the written statement of Captain Johnson and the completed investigation (*id.*). The DR Team issued a written decision stating the basis for its decision (*id.*). As a result of the infraction, Bryn was assigned to disciplinary confinement for 60 days (*id.*). Bryan appealed the disciplinary decision through the administrative grievance process (ECF No. 9-20).

### Disciplinary Report Log # 115-180910

Also on June 1, 2018, Sergeant Lewis issued Bryan a DR for battery or attempted battery on a correctional officer, a violation of Fla. Admin. Code Rule 33-601.314, Sect. 1-15, based upon events that occurred on May 29, 2018 (ECF No. 9-21 at 1). On June 7, 2018, Bryan received notice of the charge (*see id.*).

Officer Coleman investigated the charge (*see* ECF No. 9-21 at 1). Bryan declined staff assistance (*see id.*). Officer Reichert provided a witness statement (*see id.*).

Bryan's disciplinary hearing was held on June 12, 2018 (ECF No. 9-21 at 2). Bryan was present at the hearing, pled not guilty, and declined staff assistance (*id.*). The DR Team consisted of Officer Barnes and Officer Odom (*id.*). The DR Team read the statement of facts section of the DR to Bryan, and he stated, "I'm not contesting the charges. I did spray Sergeant Lewis." (*id.*). The DR Team found Bryan guilty of the charged infraction, based upon the written statement of Sergeant Lewis and the completed investigation (*id.*). The DR Team issued a written decision stating the basis for its decision (*id.*). As a result of the infraction, Bryan was assigned to disciplinary confinement for 60 days (*id.*). Bryan appealed the disciplinary decision through the administrative grievance process (ECF No. 9-22).

**State Court Proceedings**

On August 15, 2018, Bryan challenged the DRs in state court by filing a petition for writ of mandamus in the Circuit Court in and for Leon County, Florida, Case No. 2018-CA-1870 (ECF No. 9-23 at 1–14). The State filed a Response and attached the administrative record (*id.* at 17–96). Bryan filed a reply (*id.* at 97–109). The circuit court denied Bryan's petition in part and dismissed it in part (*id.* at 111–20). On February 12, 2020, the Florida First District Court of Appeal (First DCA), in Case No. 1D19-2150, affirmed the lower court's decision per curiam without written opinion (*id.* at 122–23). *Bryan v. Dep't of Corr.*, 290 So. 3d 889 (Fla. 1st DCA 2020) (Table). The mandate issued March 11, 2020 (*id.* at 121).

Bryan filed his § 2254 petition on July 13, 2020 (ECF No. 1).

II.   STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United

States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[2]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003).  After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding

---

[2] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537

U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560

(1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the petitioner must show that he is in custody "in violation of the Constitution or laws and treaties of the United States," *see* 28 U.S.C. § 2254(a), and that the constitutional error resulted in "actual prejudice," meaning, the error "had a substantial and injurious effect or influence in determining the [fact finder's] verdict," *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted).

## III.  BRYAN'S CLAIMS

Bryan's first five claims present due process challenges to the DRs (ECF No. 1 at 9–11). First, Bryan claims he was deprived of an impartial decision maker. Bryan alleges prior to the disciplinary hearings, one of the DR Team members, Officer Barnes, viewed video evidence of the underlying events and recommended

Bryan's placement in Close Management (CM)[3] (ECF No. 1 at 9; ECF No. 11 at 4). Bryan contends the FDOC's rules provide that a person shall not serve as a hearing officer when he or she witnesses or investigates the infraction at issue (*id.*). Bryan contends that by viewing the video, Officer Barnes became a witness and was thus precluded from serving on the DR Team, pursuant to FDOC Rule 33-601.306(1) (*id.*).

Second, Bryan claims that Lieutenant Pryor and Captain Johnson, the authors of three of the DRs, did not witness the infractions and left out necessary facts (ECF No. 1 at 10; ECF No. 11 at 8–9). Bryan alleges the omitted facts were that he committed the infractions in self-defense, because the victim officers sprayed him with pepper spray when he tried to give them his legal mail (*id.*). Bryan alleges Pryor and Johnson omitted these facts because they were not eyewitnesses and thus were not qualified to issue the DRs, pursuant to FDOC Rule 33-601.304(2)(g) (*id.*).

Third, Bryan claims that MK-4 chemical agent is not a "security device" as defined in FDOC Rule 33-601.314, Sect. 9-33 (ECF No. 1 at 11; ECF No. 11 at 10).

---

[3] Close Management is "the separation of an inmate from the general population, for reasons of security or the order and effective management of the institution, when the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others." Fla. Admin. Code R. 33-601.800(3)(a).

Therefore, the conduct of which he was accused did not constitute a violation of that provision (*id.*).

Fourth, Bryan claims that the warden illegally forfeited his gain time (ECF No. 1 at 11; ECF No. 11 at 10). Bryan alleges FDOC Rule 33-601.309(2)–(4) requires the regional director of the institution to review all DRs that result in a loss of more than 365 days of gain time (*id.*). Bryan alleges he lost a total of 586 days of gain time, therefore, the regional director, not the warden, was required to review the DR decisions (*id.*).

Fifth, Bryan contends that the aggregate punishment for all of the DRs, including loss of 586 days of gain time, assignment to disciplinary confinement for 300 days, and placement in CM and Maximum Management housing (MM), implicates a constitutionally protected liberty interest (ECF No. 1 at 12; ECF No. 11 at 5–7).

## A.    Clearly Established Federal Law

Discipline by prison officials in response to a prisoner's misconduct "falls within the expected perimeters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). Constitutional due process rights attach to prison disciplinary proceedings only if the proceeding at issue implicates a liberty

interest that is protected by the Due Process Clause.  *See Wolff v. McDonnell*, 418

U.S. 539, 556 (1974).  In the prison context, liberty interests

> will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force [such as in the case of involuntary transfer to a mental hospital or involuntary administration of psychotropic drugs], nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 484–85.  In *Sandin*, the Court concluded that the discipline to

which the prisoner was exposed—30 days in segregated confinement similar to

solitary confinement—did not present the type of "atypical, significant deprivation

in which a State might conceivably create a liberty interest."  *Id.* at 485–86.

Therefore, due process protections did not apply.

On the other hand, inmates have a constitutionally protected liberty interest in

gain time or good time credits.  *Superintendent, Mass. Corr. Inst., Walpole v. Hill*,

472 U.S. 445, 455 (1985).  However, "[p]rison disciplinary proceedings are not part

of a criminal prosecution, and the full panoply of rights due a defendant in such

proceedings does not apply."  *Wolff*, 418 U.S. at 556.  Where gain time credits are

at stake in a prison disciplinary proceeding, inmates must receive only the following

procedural protections:  (1) advance written notice of the charges against them; (2)

an opportunity for the inmate to call witnesses and present documentary evidence,

so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action. *Id.* at 563–66.

*Wolff* also holds that a prison hearing board must be "sufficiently impartial to satisfy the Due Process Clause." 418 U.S. at 571; *see also Edwards v. Balisok*, 520 U.S. 641, 647–48 (1997) (holding that if established, a prisoner's allegation of deceit and bias by the hearing officer at his disciplinary proceeding "would necessarily imply the invalidity of the deprivation of his good-time credits"). The Court in *Wolff* approved a disciplinary process as sufficiently impartial where it provided for investigation and an initial interview with the inmate by a staff member, followed by a hearing before a committee comprised of other prison officials who were not part of the investigation. *Wolff*, 418 U.S. at 571. As to the particular decisionmaker in *Wolff* (an Adjustment Committee), the Court considered these factors:

> The Committee is not left at large with unlimited discretion. It is directed to meet daily and to operate within the principles stated in the controlling regulations, among which is the command that "full consideration must be given to the causes for the adverse behavior, the setting and circumstances in which it occurred, the man's accountability, and the correctional treatment goals," as well as the direction that "disciplinary measures will be taken only at such times and to such degrees as are necessary to regulate and control a man's behavior within acceptable limits and will never be rendered capriciously or in the nature of retaliation or revenge."

418 U.S. at 548 n.8, 571 (quoting prison regulations). The Court held: "We find no warrant in the record presented here for concluding that the Adjustment Committee presents such a hazard of arbitrary decisionmaking that it should be held violative of due process of law." 418 U.S. at 571.

With respect to the sufficiency of the evidence to support a disciplinary decision, the Supreme Court instructs that the revocation of gain time credits satisfies minimal standards of procedural due process if the findings of the prison disciplinary board are supported by "some evidence" in the record. *Hill*, 472 U.S. at 455. In determining whether there is "some evidence" in the record to support the disciplinary decision, the Court does not engage in a de novo review of the evidence:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board. We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Hill*, 472 U.S. at 455–56 (citations omitted) (emphasis added).

## B.    Federal Review of State Court Decision

The state court adjudicated Bryan's due process claims as follows, in relevant part:

*Disciplinary Report Log # 115-180895 and # 115-180896*

Mandamus petitions seeking to overturn a prison disciplinary action invoke the courts review capacity and take the place of an appeal. See Sheley v. Florida Parole Commission, 703 So. 2d 1202, 1205–1206 (Fla. 1st DCA 1997), approved 720 So. 2d 216 (Fla. 1998) (stating that due to absence of statutory right to appeal parole commission actions, mandamus has become the accepted remedy for the review of a commission order). The traditional mandamus action requires the petitioner to establish a clear legal right to performance of the act requested, an indisputable legal duty by the public officer to perform the act, and no adequate remedy at law. See Hatten v. State, 561 So. 2d 562, 563 (Fla. 1990). In prison disciplinary proceedings in which gain time is forfeited, prisoners have a clear legal right to both the limited due process protections set out in Wolff v. McDonnell, 418 U.S. 539 (1974), and Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445 (1985), as well as the Department rules which implicate those due process protections.[FN 1] Wolff requires that a prisoner receive: (1) advance written notice of the disciplinary charge; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 564–65. Hill requires that there be "some evidence" to support the findings of the disciplinary hearing team. Hill, 472 U.S. at 455.

> [FN 1: A liberty interest is not created by the "mandatory language and substantive predicates in the Department's rules and regulations" as was previously indicated in McQueen v. Tabah, 839 F.2d 1525 (11th Cir. 1988). This analysis was expressly abandoned by the United States

Supreme Court in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), in favor of requiring a showing that the alleged restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."   <u>See</u> <u>Magluta v. Samples</u>, 375 F.3d 1269 1269, 1282, 1284 (11th Cir. 2004) (quoting <u>Sandin</u>, 515 U.S. at 484, 115 S. Ct. at 2300).   The role of the court is not to determine whether disciplinary hearings comply with every detail in administrative regulations but instead whether the hearings are consistent with the minimal safeguards afforded by the due process clause. <u>See</u> <u>Black v. Warren</u>, 134 F.3d 732, 734 (5th Cir. 1998); <u>See</u> <u>Hildebrandt v. Butts</u>, 550 Fed. Appx. 697, 700 (11th Cir. 2013) ("Hildebrandt's due process claim misses the mark by equating state-law administrative procedure with constitutional due process.   Federal due process does not require that state prison officials strictly comply with administrative regulations governing disciplinary hearings in the prison setting).]

The Court finds Petitioner's challenges to DR Log #115-180895 and #115-180896 are denied because he was afforded due process in connection with the DR investigations and hearings.   Petitioner received advanced [sic] written notice of the charges against him in advance of the June 11, 2018 hearings.   <u>See</u> Respondent's Exhibits A and I. Petitioner was provided the opportunity to submit a witness statement regarding his version of the events, and he did. <u>See</u> Respondent's Exhibits B and J.  Petitioner was given the opportunity to name witnesses in his defense; and he did not.   <u>See</u> Respondent's Exhibits C and K.   Petitioner was also provided the opportunity to request physical or documentary evidence in his defense, and he did not.   <u>See</u> Respondent's Exhibits D and L.  Finally, Petitioner received a written statement by the fact finder detailing the evidence relied on and the reasons for the disciplinary action in this case.   <u>See</u> Respondent's Exhibits A and I.  Thus, Petitioner received all the due process protections of <u>Wolff</u>.

. . . .

To the extent Petitioner alleges that the hearing teams failed to comply with Rules 33-60l.304(2)(a) and (g), F.A.C., such a claim is meritless and refuted by the record. See Respondent's Exhibits A-D and I–L. The rule only requires a date, time and place, not a specific time, but both DR log #115-180895 and #115-180896 state that the incident occurred at approximately 8:08 AM. See Respondent's Exhibit A and I. Rule 33-601.304(2)(g), Fla. Admin. Code, states in pertinent part:  (g) Any other specific facts necessary for an understanding of the charge. Petitioner declined staff assitance [sic] and wrote a witness statement that could be construed as an apology. See Respondent's Exhibits A, B, I, and J. The video evidence was compelling as to the events that occurred. See Respondent's Exhibits A and I. . . . Finally, Petitioner's claim that he was the victim of abuse by officers and that precipitated the event, is contradicted by the record and constitutes a challenge to the sufficiency of the evidence. Accordingly, that would not be listed in the statement of facts as the record shows that it did not occur. Therefore, no other facts were necessary to understand the charges.

To the extent Petitioner claims that the regional director was to act as the final reviewing authority of his DRs, he misconstrues the rule. Rule 33-601.309(3), Fla. Admin. Code, states in pertinent part:

> (3) The regional director of institutions acts as the final reviewing authority for all disciplinary reports in which the recommended penalty exceeds 365 days loss of gain time.

Petitioner lost three hundred (300) days gain time for DR log number 115-180895. Petitioner lost two hundred eighty-six (286) days gain time for DR log number 115-180896. The rule does not state that the regional director needs to be the final reviewing authority if gain time is for more than one DR or that cumulatively the loss of gain time from multiple DRs is more than 365 days. Therefore, the DRs were reviewed by Warden Booker. See Respondent's Exhibits A and I.

To the extent Petitioner alleges that Lieutenant Pryor and Captain Johnson were not allowed to write a disciplinary [sic] from watching the video of the incident, his claim is refuted by the record. Additionally, he claims they needed approval to write the disciplinary [sic]. Rule 33- 601.303, Fla. Admin. Code, states in pertinent part

> (1) When any employee . . . witnesses an act . . . which is in violation of the rules or procedures of the Department . . .
> (2) If the employee cannot resolve the matter through a verbal reprimand . . . the employee shall consult with and obtain approval from his or her supervisor regarding preparation of a formal disciplinary report, unless the employee is at the department head level or correctional officer lieutenant level or above.

Pryor is a Lieutenant and Johnson is a Captain, both reviewed the video of the incident and reported the incident as each viewed it and wrote the reports.  See Respondent's Exhibits A, H, I, Q, S, and U.

To the extent Petitioner alleges that Officer Barnes was not allowed to be a hearing team member because she referred Petitioner to Close Management prior to the DR hearings, his claim is meritless.  As stated infra, placement on CM is non-punitive and does not arise as a direct consequence of disciplinary action.  Additionally, the rule does not prohibit someone who refers an inmate to CM from being a participant on the hearing team or as a hearing officer.  See Rule 33-601.306(1).

. . . Petitioner also alleges that Rule 33-601.314(9-33), F.A.C. was violated because he believes that a MK-4 is not a security device. See Petition at 7.  Petitioner did not lose gain time for the DR that referred to the MK-4 as a security device.  See Respondent's Exhibit S. Further, Petitioner's DRs are fully supported by the weight of the evidence present in this case.  Prisoners possess a liberty interest in their statutorily provided good time credits.  See Wolff, 418 U.S. at 557.  The government may not deprive a prisoner of those credits without due

process.  Id.  Here, Petitioner was found guilty based upon the facts confirmed during the DR investigations.  See Respondent's Exhibits A and I.  Additionally, Petitioner does not dispute that he engaged in the actions in this petition.  See Petitioner's Petition.  Petitioner even tacitly admits he committed the infractions by apologizing for his actions.  See Respondent's Exhibits B & J.

### *Disciplinary Report Log# 115-180907, 115-180909, and 115-180910*

Mandamus petitions seeking to overturn a prison disciplinary action invoke the courts review capacity and take the place of an appeal. See Sheley v. Fla. Parole Comm'n, 703 So. 2d 1202, 1205–1206 (Fla. 1st DCA 1997), approved 720 So. 2d 216 (Fla. 1998) (stating that due to absence of statutory right to appeal parole commission actions, mandamus has become the accepted remedy for the review of a commission order); Doss v. Fla. Dep't of Corr., 730 So. 2d 316 (Fla. 4th DCA 1999) (reasoning in Sheley applies to decisions of Department of Corrections on disciplinary violations).  The appellate review afforded by this type of mandamus action is a determination regarding whether the petitioner was afforded due process in his prison disciplinary proceedings.  Id.  The United States Supreme Court has stated that the standard analysis under the Due Process Clause "proceeds in two steps:  We first ask whether there exists a liberty or property interest of which a person has been deprived, *and if so* we ask whether the procedures followed by the State were constitutionally sufficient."  Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (citing Ky. Dep't. of Corr. v. Thompson, 490 U.S. 454, 460 (1989)) (emphasis added).  If there is no liberty or property interest at issue, the analysis of whether a petitioner was afforded due process ends.  See Stanley v. St. Paul, 773 F. Supp. 2d 926, 929 (D. Idaho 2011) (stating that, in the wake of Swarthout, "case law permitting due process claims in inmate settings where no liberty interest is found, e.g., Burnsworth v. Gunderson, 179 F.3d 771, 775 (9th Cir. 1999) no longer provide viable legal grounds for relief").  Therefore, in order to receive mandamus relief, a petitioner must show a liberty interest giving rise to the protection of the Due Process Clause.  See Sandin v. Connor, 515 U.S.

472, 478 (1995); <u>Plymel v. Moore</u>, 770 So. 2d 242, 248–49 (Fla. 1st DCA 2002).

The Court finds the Petitioner failed to show a right to due process protections because the Petitioner does not demonstrate a due process liberty sufficient to give rise to the protections of the Due Process Clause because he lost no gain time as a result of DR Log # 115-180907, 115-180909, and 115-180910. <u>See</u> <u>Castillo v. State Dept. of Corrections</u>, 174 So. 3d 452 (Fla. 1st DCA 2015) (holding that inmate failed to demonstrate any liberty interest implicating the protections of due process clause where inmate challenged a disciplinary report that resulted in him being placed in disciplinary confinement for thirty days). As a result of these three DRs, Petitioner was assigned to sixty (60) days of disciplinary confinement. <u>See</u> Respondent's Exhibit Q, S, and U. Therefore, like the inmates in <u>Sandin</u>, <u>Williams v. Tucker</u>, 87 So. 3d 1270, 1271 (Fla. 1st DCA 2012), and <u>Wilder v. Fla. Dept. of Corrections</u>, 139 So. 3d 462 (Fla. 1st DCA 2014), Petitioner was not effectively subjected to the withdrawal of good time credits and therefore, did not satisfy the <u>Sandin</u> standard of atypicality. Accordingly, these claims are dismissed as Petitioner is not entitled to relief because he cannot demonstrate that a due process liberty interest was violated by the actions of Department officials.

To the extent Petitioner requests to be removed from Close Management, this Court finds a close management challenge is properly brought by a Petition for Writ of Habeas Corpus. <u>Banks v. Florida Department of Corrections</u>, 232 So. 3d 963, 966 (Fla. 2017). A habeas corpus petition filed by a prisoner must be filed in the circuit court of the county in which the prisoner is detained. § 79.09, Fla. Stat.; <u>Ruiter v. Wainwright</u>, 249 So. 2d 67 (Fla. 2d DCA 1971); <u>Johnson v. Florida Parole Commission</u>, 841 So. 2d 615 (Fla. 1st DCA 2003). As Petitioner is currently detained at Okaloosa County Jail in Okaloosa County, Florida, this Court is without jurisdiction to address the merits of Petitioner's claims. Accordingly, this claim is dismissed without prejudice to Petitioner filing a proper habeas in the circuit court of the county in which he is currently detained.

(ECF No. 9-23 at 112–19).

Bryan sought review of the circuit court's decision in the First DCA. The First DCA affirmed the lower court's decision per curiam without written opinion (ECF No. 9-23 at 122–23). *Bryan v. Dep't of Corr.*, 290 So. 3d 889 (Fla. 1st DCA 2020) (Table).

In *Wilson v. Sellers*, 138 S. Ct. 1188 (2018), the Supreme Court held that, when a state court's adjudication on the merits—such as the First DCA's per curiam decision here—has no reasoned opinion, a "federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Id.* at 1192. Here, the circuit court's decision denying mandamus was the last state-court decision providing a relevant rationale. Therefore, the court will review that decision under § 2254(d).

The circuit court correctly identified *Sandin* and *Wolff* as setting forth the correct legal standards applicable to Bryan's due process challenges to the DRs. Bryan thus cannot demonstrate that the state court's decision was "contrary to" clearly established federal law under § 2254(d)(1).

To satisfy the "unreasonable application" clause of § 2254(d)(2), Bryan must demonstrate that no fairminded jurist would agree with the state court's

determination that Bryan received the process he was due in the disciplinary proceedings.

### Ground A:  Biased DR Team Member

Bryan claims that the DR Teams included a biased member, Officer Barnes (ECF No. 1 at 9; ECF No. 11 at 4).  Bryan alleges Officer Barnes reviewed a video of the incidents underlying the DRs, concluded that Bryan's behavior proved he was unable to function in general population, and recommended his placement in CM (*id.*).  Bryan alleges Officer Barnes' recommendation for CM placement occurred prior to the DR hearing (*id.*).  He contends Officer Barnes predetermined his guilt and thus was not impartial when she served on the DR Teams (*id.*).

As previously discussed, the Court in *Wolff* approved a disciplinary process as sufficiently impartial where it provided for investigation and an initial interview with the inmate by a staff member, followed by a hearing before a committee comprised of other prison officials who were not part of the investigation.  *Wolff*, 418 U.S. at 571.

After *Wolff*, neither the Supreme Court nor the Eleventh Circuit has elaborated a more specific standard for evaluating a claim of bias on the part of a disciplinary hearing officer.  In the analogous context of administrative hearings, the Supreme Court has recognized "a presumption of honesty and integrity in those serving as

adjudicators." *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *id.*, 421 U.S. at 55 ("Without a showing to the contrary, state administrators are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." (internal quotation marks and citation omitted)); *Washington v. Harper*, 494 U.S. 210, 233–34 (1990) ("[W]e are not willing to presume that members of the [prison medical and correctional] staff lack the necessary independence to provide an inmate with a full and fair hearing in accordance with the [institutional] Policy."); *Schweiker v. McClure*, 456 U.S. 188, 195 (1982) (holding that courts "must start . . . from the presumption that the hearing officers . . . are unbiased."). The party who alleges bias has the burden of overcoming the presumption of impartiality. *Schweiker*, 456 U.S. at 195–96; *Withrow*, 421 U.S. at 47–48; *Johnson v. U.S. Dep't. of Agric.*, 734 F.2d 774, 783 (11th Cir. 1984).

FDOC policy precludes a person from serving as a member of the DR Team when the person is (1) a witness or person who wrote the DR, (2) the person who investigated the DR, or (3) the person charged with review of the results of the DR hearing. *See* Fla. Admin. Code R. 33-601.306. The process provided in FDOC policy comports with due process requirements of *Wolff*.

Further, the record demonstrates that this constitutional procedure was followed in Bryan's case. Officer Barnes was not a witness in any of the investigations—the witnesses were Officer Hammac, Officer Blackburn, Sergeant Lewis, and Officer Reichert (*see* ECF No. 9-1 at 2; ECF No. 9-9 at 1; ECF No. 9-17 at 1; ECF No. 9-19 at 1; ECF No. 9-21 at 1). Officer Barnes did not write or investigate any of the DRs—the DR authors and investigators were Officer Pryor, Officer Calfee, Officer Richert, Officer Aaron, Officer Johnson, Officer Lewis, and Officer Coleman (*see* ECF No. 9-1 at 1–2; ECF No. 9-9 at 1; ECF No. 9-17 at 1; ECF No. 9-19 at 1; ECF No. 9-21 at 1). Officer Barnes did not review the DR Teams' decisions or recommendations from any of the DR hearings; instead, Warden Booker reviewed the decisions and recommendations and took final action (*see* ECF No. 9-1 at 3; ECF No. 9-9 at 3; ECF No. 9-17 at 2; ECF No. 9-19 at 2; ECF No. 9-21 at 2).

Additionally, the record of the disciplinary hearings demonstrates that the DR Teams' decisions were based upon the witnesses' statements and any input from Bryan during the DR hearings. There is no evidence that Officer Barnes' decision during any of the DR hearings was based upon, or unduly influenced by, her review of any other materials.

Bryan failed to show a violation of *Wolff* with respect to Officer Barnes' serving on the DR Teams; therefore, he is not entitled to federal habeas relief on Ground A.[4]

### Ground B:  Unqualified Authors

Bryan claims that Lieutenant Pryor and Captain Johnson were not qualified to write three of the DRs (DR Log #115-180895, DR Log #115-180896, and DR Log #115-108909) because they did not witness the events, and they omitted necessary facts from the DRs (ECF No. 1 at 10; ECF No. 11 at 8–9).

*Wolff* does not set forth any constitutional standard with respect to the qualifications of authors of disciplinary charges.  FDOC policy provides that a DR may be prepared by "any employee or person supervising inmates [who] witnesses an act *or has reason to believe that an act has been committed* by an inmate which is in violation of the rules or procedures of the Department . . . ."  Fla. Admin. Code R. 33-601.303(1) (emphasis added).

Here, the record demonstrates that the DRs authored by Lieutenant Pryor and Captain Johnson were based upon their review of video recordings of the hallway of

---

[4] Even though the state court conducted a merits review of this due process claim only with respect to DR Log ##115-180895 and 115-180896, the undersigned has done so with respect to all of the DRs and concludes that Bryan's due process claim is without merit.

"B" dormitory on the morning of May 29, 2018 at approximately 8:08 (*see* ECF No. 9-1 at 1; ECF No. 9-9 at 1; ECF No. 9-19 at 1).  In the Statement of Facts section of each of the DRs they authored, Lieutenant Pryor and Captain Johnson described what they saw in the video, and they note that the victims were not available to write the DRs because they were taken to a hospital for medical treatment following the incidents with Bryan (*see id.*).

Bryan also contends Lieutenant Pryor and Captain Johnson omitted material facts from the DRs they authored, specifically, facts which showed that he acted in self-defense.  *Wolff* requires that an inmate receive advance written notice of the charge against him.  Here, Bryan received notice of the charges against him and the factual basis for the charges; and he received the notices at least five days prior to the DR hearings (*see* ECF Nos. 9-1, 9-9, 9-17, 9-19, 9-21).  Further, Bryan was present at the DR hearings and had the opportunity to supply the DR Team with any and all facts he deemed necessary for their decisions.  Notably, Bryan told the DR Team he agreed with the Statement of Facts authored by Lieutenant Pryor in DR Log ##115-180895 and 115-180896.

Bryan failed to show that the DRs authored by Lieutenant Pryor and Captain Johnson violated *Wolff*. Therefore, he is not entitled to federal habeas relief on Ground B.[5]

### Ground D[6]:  Unauthorized Gain Time Forfeiture

Bryan claims that two of the DRs, Log #115-180895 and #115-180896, resulted in the loss of a total amount of 586 days of gain time (ECF No. 1 at 11; ECF No. 11 at 10). Bryan contends FDOC policy requires the regional director to review all DRs in which the penalty exceeds 365 days of forfeited gain time (*id.*).

*Wolff* does not impose any constitutional requirement regarding the level of authority of the official who provides final review of a disciplinary decision, including those which result in the loss of gain time. FDOC policy provides that the warden acts as the final reviewing and approving authority for all DRs in which the recommended penalty does not exceed a loss of more than 365 days of gain time. *See* Fla. Admin. Code R. 33-601.309(2). Policy provides that the regional directors of institutions act as the final reviewing and approving authority for all DRs in which

---

[5] Even though the state court conducted a merits review of this due process claim only with respect to DR Log ##115-180895 and 115-180896, but did not as to DR Log #115-180909, the undersigned has done so and concludes that Bryan's due process claim is without merit.

[6] For organizational reasons, the court is addressing Bryan's claims in a different order than he presents them in his § 2254 petition.

the recommended penalty exceeds 365 days' loss of gain time.  *See* Fla. Admin. Code R. 33-601.309(2)–(3).

Here, the record demonstrates that the recommended penalty for DR Log #115-180895 was a loss of 300 days of gain time, and the recommended penalty for DR Log #115-180896 was a loss of 286 days of gain time (ECF No. 9-1 at 3; ECF No. 9-9 at 2).  Because neither of the DR decisions resulted in a recommended penalty of a loss of more than 365 days of gain time, the warden was authorized to review each of them.  The state court's rejection of this claim was not an unreasonable application of *Wolff*; therefore, Bryan is not entitled to federal habeas relief on Ground D.

### Ground C:  Insufficient Evidence that MK-4 is a "Security Device"

Bryan challenges the sufficiency of the evidence to support DR Log # 115-180909, Tampering With, Defeating or Depriving Staff of Any Security Device, a violation of Fla. Admin. Code R. 33-601.314, Sect. 9-33 (ECF No. 1 at 11; ECF No. 11 at 10).  Bryan alleges a canister of MK-4 chemical agent is not listed within the definition of "security device" under that provision (*id.*).

The state court rejected Bryan's due process challenge to this DR, on the ground that it did not implicate a constitutionally protected liberty interest under

*Sandin* because the only penalty imposed was assignment to disciplinary confinement for 60 days.

Bryan contends the state court unreasonably applied *Sandin* in determining that he did not have a protected liberty interest in the DRs for which he did not lose gain time, because the disciplinary decisions formed the basis for his placement in CM and MM at Florida State Prison (ECF No. 1 at 12; ECF No. 11 at 1–2, 5–7). Bryan alleges the severity and duration of conditions to which inmates are exposed in MM and CM satisfy the "atypical hardship" requirement of *Sandin* (*see id.*).

Even if this federal court accorded no deference to the state court's application of *Sandin*, Bryan is not entitled to federal habeas relief because his due process claim has no merit.

Sect. 9-33 of Rule 33-601.314 defines the disciplinary infraction at issue as follows:

> Tampering with, defeating or depriving staff of any security device. Security devices include: locks; locking devices; electronic detection systems; personal body alarm transmitters and receivers; handheld radios; restraint devices such as handcuffs, waist chains, leg irons and handcuff covers; keys; video and audio monitoring and recording devices; security lighting; *weapons; and any other device utilized to ensure the security of the institution.*

Fla. Admin. Code R. 33-601.314, Sect. 9-33 (emphasis added). Even though chemical agent is not expressly listed in Sect. 9-33, chemical agents are defined as

"Less-Lethal Weapons" elsewhere in FDOC policies, for example, the policy governing the use of force by correctional officers on inmates. *See* Fla. Admin. Code R. 33-602.210(1)(o).

The factual basis for the charge at issue was included in the Statement of Facts section of the DR authored by Captain Johnson (ECF No. 9-19 at 1). Captain Johnson stated he reviewed a video recording of the hallway of Bryan's dormitory from May 29, 2018 at 8:08 a.m., and observed Bryan take a canister of MK-4 chemical agent, which was assigned to Officer Hammac, and twice spray Hammac in the face with it (*id.*). The DR Team found Bryan guilty of the charge based upon Captain Johnson's statement and the completed investigation (*id.* at 2). Bryan does not dispute that the engaged in the conduct reported by Captain Johnson.

Captain Johnson's statement was sufficient evidence, under *Hill*, to support Bryan's conviction of DR Log #115-180909. Therefore, Bryan is not entitled to federal habeas relief on Ground C.

### Ground E:  Placement in MM and CM

Bryan alleges as a result of the five DRs, he was placed in MM and CM "indefinitely" and in disciplinary confinement for 300 days (ECF No. 1 at 12; ECF No. 11 at 5–7). Bryan alleges on May 30, 2018, he was transferred to Florida State Prison for placement in MM (ECF No. 11 at 1, 5). He alleges upon his arrival at

FSP, the duty warden recommended his placement in MM due to assaulting staff (*id.*). Bryan alleges the recommendation was approved on June 19, 2018 (*id.*). Additionally, Bryan alleges that on June 1, 2018, Officer Barnes recommended that his custody classification status be modified to CM, because Bryan's assault and battery upon staff proved he was unable to function in general population (*id.* at 1). Bryan contends he had a liberty interest in remaining in the general population, because the severity and duration of the restrictive conditions to which he is exposed in MM, CM, and disciplinary confinement satisfy the "atypical hardship" requirement of *Sandin* (*see* ECF No. 1 at 12; ECF No. 11 at 2, 5–7). Bryan contends the state court's adjudication of his due process challenges to the five DR's was contrary to or an unreasonable application of *Sandin* and *Wolff* (ECF No. 11 at 7).

To the extent Bryan is arguing that the state court's adjudication of the merits of Grounds A, B, and D with respect to the DR's that resulted in a loss of gain time (DR Log ##115-180895 and 115-180896) was contrary to or an unreasonable application of *Wolff*, those arguments were addressed and rejected *supra*.

To the extent Bryan is arguing that the state court's *failure* to adjudicate the merits of Grounds A, B, and C—with respect to the DR's that did *not* result in a loss of gain time (DR Log ##115-180907, 115-180909, and 115-180910)—was contrary to or an unreasonable application of *Sandin* and *Wolff*, Bryan is not entitled to federal

habeas relief.  Assuming, without deciding, that the aggregate sanctions Bryan suffered as a result of the DRs implicated a constitutionally protected liberty interest under *Sandin*, the undersigned concludes, based upon an independent merits review of those claims, that Bryan received all the process he was due in DR Log ##115-180907, 115-180909, and 115-180910.

For the reasons discussed *supra* in Grounds A and B, Officer Barnes' serving as a member of the DR Team in all of the disciplinary proceedings, and Captain Johnson's authoring DR Log # 115-180909, did not violate Bryan's due process rights under *Wolff*.  And for the reasons discussed *supra* in Ground C, there was sufficient evidence, under *Hill*, that Bryan committed the violation charged in DR Log # 115-180909 by taking Officer Hammac's canister of MK-4 and spraying her with it.  Undertaking *de novo* review of Bryan's due process challenges to the DRs that did not result in a loss of gain time (DR Log ##115-180907, 115-180909, and 115-180910), Bryan has not shown he was deprived of the process he was constitutionally due during these disciplinary proceedings.

To the extent Bryan presents due process challenges to the decisions placing him on MM and CM, the State contends Bryan did not properly exhaust his state court remedies because, as the state court determined, Bryan's challenges to the

placements were not properly brought in the mandamus action and must be raised in a state habeas action (*see* ECF No. 9 at 15 n.2).

The state circuit court determined that it did not have jurisdiction, under state law, to adjudicate any due process challenges to Bryan's classification decisions and placements and it dismissed those challenges without prejudice to Bryan's filing a habeas petition in the circuit court of the county of his current detention *see* ECF No. 9-23 at 118–19). The First DCA affirmed this decision.

Where, as here, the Florida state court determines that a state procedural rule precludes the court's consideration of the merits of the petitioner's claim, the federal courts will generally defer to that determination. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (the federal habeas court must abide by the state court's interpretation of state law); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). The federal court should apply the state procedural bar and decline to reach the merits of the claim. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994) (emphasis added) (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Richardson v. Thigpen*, 883 F.2d 895, 898 (11th Cir. 1989)). This principle applies so long as the state procedural ruling rests on an "independent and adequate state ground." *Alderman*, 22 F.3d at 1549 (citing *Harris*, 489 U.S. at 262)).

A state court's procedural ruling constitutes an independent and adequate state rule of decision where (1) the state court clearly and expressly states it is applying state procedural rules to resolve the federal claim, (2) the state court's decision on the procedural issue rests entirely on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

Here, the state court held that it did not have jurisdiction to consider any due process challenges to Bryan's classification decisions and placements, and that Bryan must present such challenges in a different type of civil action in a different court (i.e., a habeas action instead of a mandamus action filed in the circuit court of his current confinement).  The court cited state court decisions and one state statute setting forth and applying this state procedural rule:  *Banks v. Fla. Dep't of Corr.*, 232 So. 3d 963, 966 (Fla. 2017) (holding hat a petition for a writ of habeas corpus is the correct mechanism by which a prisoner may challenge a reassignment to a restrictive housing classification); Florida Statutes § 79.09 (habeas petition must be filed in the circuit court of the county in which the prisoner is detained); and *Ruiter v. Wainwright*, 249 So. 2d 67 (Fla. 2d DCA 1971) (holding that habeas petition should have been filed in the circuit court where the petitioner was in custody).

These sources of state law demonstrate that the state procedural rule relied upon by the state court in Bryan's case was firmly established and regularly followed.

Because the state court determined that Bryan's due process challenges to the classification decisions and placements were subject to an independent and adequate state procedural rule, this federal court will honor that procedural ruling. Although there are ways to overcome a procedural default, Bryan has not done so here. Bryan is thus not entitled to federal habeas relief on any due process challenges to his placement in MM and CM, independent of his due process challenges to the DRs underlying these classification and placement decisions.

### Ground F:  Challenge to State Court's Assessment of Filing Fee

In Bryan's final claim, he contends the state court violated Florida Statutes § 57.085 by assessing $425.00 in court costs and fees against him for filing the mandamus action and then collecting that amount by ordering the FDOC to place a lien on his inmate account, pursuant to Florida Statutes § 57.085(2)–(5) (ECF No. 1 at 13; ECF No. 11 at 11–12). Bryan contends the mandamus proceeding was a "collateral criminal proceeding" and thus exempt from the indigency statute, pursuant to Fla. Stat. § 57.085(10) (*id.*).

It is well established that due process violations that allegedly occur during state proceedings collateral to the disciplinary proceedings do not form the basis of

habeas relief.  *See Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365–66 (11th Cir. 2009); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004).  A decision in a state collateral proceeding is not a criminal judgment, or executive agency equivalent, that resulted in the prisoner's detention.  *See Carroll*, 574 F.3d at 1365 ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—i.e., the conviction itself . . . .").  Collateral proceedings are instead "civil in nature and are not part of the criminal proceeding itself."  *Pennsylvania v. Finley*, 481 U.S. 551, 556–57 (1987).  For this reason, alleged procedural violations during state collateral proceedings are "issues unrelated to the cause of the petitioner's detention."  *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987).  As such, they cannot form the basis for habeas relief. *See Carroll*, 574 F.3d at 1365 (holding that a failure to hold an evidentiary hearing in a state post-conviction proceeding was not a basis for habeas relief); s*ee also In re Rutherford*, 437 F.3d 1125, 1127 (11th Cir. 2006) (finding insufficient for habeas relief the petitioner's claim that the state post-conviction court denied him due process by failing to provide mental health records of a person the petitioner alleged had actually committed the crime); *Quince*, 360 F.3d at 1262 (rejecting federal habeas petition which alleged that the state judge presiding over the petitioner's post-

conviction hearing denied the petitioner due process by not recusing himself, because the claim did not relate to the petitioner's conviction).

Bryan's challenge to the state circuit court's assessment and collection of a filing fee in the mandamus proceeding does not state a cognizable federal habeas claim. Therefore, Bryan is not entitled to relief on Ground F.

IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to

proceed further.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 327). The petitioner here cannot make that showing. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the habeas petition challenging FDOC DR Log Nos. 115-180895, 115-180896, 115-180907, 115-180909, and 115-180910 (ECF No. 1) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22nd day of February 2021.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**